EQUITABLE INFANTS WEAR, Inc.,
v.
The UNITED STATES.
No. Congressional 10–54.

United States Court of Claims.
March 6, 1957.

Ernest Schein, Washington, D. C., for plaintiff. L. Chester Glaser, New York City, was on the brief.

Ernest R. Charvat, Cleveland, Ohio, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case has been referred to us by Congress asking for a report on the facts and on whether plaintiff has a claim against the United States, either in law or equity, and the amount legally or equitably due, if any.

The facts are stated in the findings; they are repeated in this opinion only to the extent necessary to give the reason for the conclusion we have reached. That conclusion is that plaintiff has no claim against the United States either in law or equity.

Except for the passage of the Philippine Rehabilitation Act of 1946, 60 Stat. 128, 50 U.S.C.A.Appendix, § 1751 et seq., plaintiff of course would have no right of action against the United States, because it was not the United States that deprived it of its property. That Act authorizes the Commission set up by the Act to make an award to a person in the Philippines for "physical loss or destruction of or damage to property * * * as a result of * * * enemy attack * * *." The proof tends to show that some of plaintiff's property was so lost or destroyed, to wit, its "materials on hand, supplies, pieces in factory, plant equipment, and a 1940 Pontiac" automobile. Plaintiff claims a total value for these of $18;420.20.

The proof does not show what happened to the items in the hands of subcontractors. The subcontractors were housewives, to whom the plaintiff had delivered partly processed materials for finishing. What these women did with the materials on hand when the enemy occupied Manila is not shown. After reoccupation by the American forces, an employee of the old company, of the same name as plaintiff's, undertook to locate the materials, but could find neither the materials nor the women.

We think it fair to say that plaintiff lost these materials also as a result of "enemy attack." Plaintiff claims they had a value of $16,487.03.

Plaintiff's figures are not disputed.

The Act authorizes payment for "the physical loss * * * or damage to property." Obviously, "overhead and accounts receivable" do not come within this category; nor does the proof show that they were lost as the result of enemy attack.

Plaintiff of course is not entitled to recover for "personal clothing of employee."

Had the Commission found that plaintiff was a qualified claimant under the Act, the amount it would have approved, in any event, could not have exceeded $34,907.23, of which amount the Commission would have paid 52½ percent. But we do not think it is entitled to any amount for two reasons:

■ (1) The Philippine Rehabilitation Act vests exclusive jurisdiction in the Commission to make an award to a claimant and provides that its findings "shall not be reviewable by any court." The Commission allowed plaintiff nothing. This, of course, does not prevent Congress from doing so; but, in the absence of an award by the Commission, plaintiff has no claim against the United States either in law or equity.

■ (2) But, more important, plaintiff is not one of the class of persons who qualify for an award under the Act, whether or not its property was lost or destroyed by enemy action. It was not every person who had lost his property by such action that qualified for an award. It was only those persons who had rebuilt, replaced, or repaired the property lost or damaged; or, if this was "impossible for any reason beyond the control of the claimant," the Commission was authorized to make payment, but "as a condition to the making of such payment, the Commission shall require that the whole of such payment shall be reinvested in such manner as will further the rehabilitation or economic development of the Philippines."

The Act was not passed for the benefit of those who had lost their property through the fortunes of war, but rather for the purpose of rehabilitating the economy of the country. No claim for lost property was paid unless the Commission thought its payment would contribute toward the rehabilitation of the economy of the country.

The Act itself makes this clear. House Report No. 1921, 79th Congress, 2d Session, on S. 1610, states the purpose somewhat more plainly. It says on page 9:

"The bill is not a private claims measure to reimburse individuals or organizations for damage incurred in war. The primary function of the payment is to assist and encourage rehabilitation and rebuilding of the economy and social structure of the Nation. Some individual hardships may be caused by insistence on the rehabilitation principle, but your committee felt that no other considerations should be provided in this legislation."

The Commission's report to Congress on March 31, 1951, shows that this is the way the Act was administered. It says:

"The Commission consistently maintained a close check on the uses to which the larger claimants put their war damage payments. Its regulations prescribed those types of reinvestment which it believed were required to meet the intent of the law. Before first payments of $15,000 or more were made, the claimant was required to submit a

sworn statement regarding the planned expenditure of the money, except when the Commission had concrete evidence that he had invested more in the rehabilitation of his property than he would be paid. Unless the reinvestment statements were satisfactory, payments were denied. Before second and final payments were made on claims for which combined payments would total $25,000 or more, the Commission again communicated with claimants to make certain that first payments had been expended in accordance with their sworn statements and that second payments would also be used for rehabilitation. These replies had to be satisfactory to the Commission before funds were released. In this manner, the Commission believes it insured the proper expenditure and reinvestment of its rehabilitation funds."

Now the proof shows that after plaintiff's plant was closed by the Japanese, it wound up its business and was dissolved in 1945. Having been dissolved, plaintiff, of course, could not rebuild or replace its equipment and its materials and supplies and, hence, could contribute nothing toward the rehabilitation of the Philippine economy.

Nor did the formation of the new corporation in 1950 under the old name qualify it for an award, because, as found by the Commission, it did not intend to engage in business in the Philippines. Hence, the payment to it of any award would not contribute toward the rehabilitation of the Philippine economy.

The Commission further found that plaintiff intended to invest the amount paid to it in the business conducted by Baby Fashions, Inc. Nevertheless, the Commission was of the opinion that the plaintiff was not a qualified claimant under the Act.

Baby Fashions, Inc., was not the successor of Equitable Infants Wear, Inc. It was wholly owned by Pauline Tawil, the widow of Ralph Tawil. The stock of Equitable Infants Wear was owned by Ralph Tawil and Shaya Dweck. They were two separate and distinct corporations.

Shaya Dweck, one of the two stockholders of the Equitable Infants Wear, but not a stockholder in Baby Fashions, at one time stated to the Commission that all of the assets of Equitable Infants Wear, except its claim for the loss of its property, were transferred to Baby Fashions, but in another letter he stated that Baby Fashions was not and never was the successor to Equitable Infants Wear, and said, in contradiction to his other letter, that Equitable Infants Wear had not transferred its assets and liabilities to Baby Fashions. At least it appears that it never transferred its claim for the loss of its property.

Plaintiff's expressed intention of investing the proceeds of the award in the *business* of Baby Fashions, Inc., would not seem to make of it a qualified claimant under the Act. Baby Fashions, Inc., was a New York corporation which had its goods manufactured in the Philippines, but sold them in this country. An investment in its business, therefore, might or might not contribute to the rehabilitation of the Philippine economy. Such an investment did not replace the property lost or destroyed, which was the prime purpose of the Philippine Rehabilitation Act; Baby Fashions, Inc., already had its plant and equipment, which it had been operating since September 1945.

We cannot say, therefore, that an investment in the *business* of this company would have contributed toward the rehabilitation of the economy of the Philippines.

However, the determination of that question and of all the other questions concerned with the making of an award was committed to the Philippine War Damage Commission, and that Commission was of opinion that the plaintiff had not qualified under the Act.

We must conclude, therefore, that the plaintiff has no claim against the United

States, either legal or equitable. We so report to the House of Representatives.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

LITTLETON, Judge, is of the opinion that plaintiff has an equitable claim.